LATHAM & WATKINS LLP
  Amy C. Quartarolo (SBN 222144)
   amy.quartarolo@lw.com
  Adam S. Sieff (SBN 302030)
   adam.sieff@lw.com
  Harrison J. White (SBN 307790)
   harrison.white@lw.com
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone: +1.213.485.1234
Facsimile: +1.213.891.8763

*Attorneys for Plaintiffs
Aiden Stockman, Nicolas Talbott,
Tamasyn Reeves, Jaquice Tate,
John Does 1-2, Jane Doe, and
Equality California*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIDEN STOCKMAN; NICOLAS TALBOTT; TAMASYN REEVES; JAQUICE TATE; JOHN DOES 1-2; JANE DOE; and EQUALITY CALIFORNIA,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; JAMES N. MATTIS, in his official capacity as Secretary of Defense; JOSEPH F. DUNFORD, JR., in his official capacity as Chairman of the Joint Chiefs of Staff; RICHARD V. SPENCER, in his official capacity as Secretary of the Navy; RYAN D. MCCARTHY, in his official capacity as Acting Secretary of the Army; HEATHER A. WILSON, in her official capacity as Secretary of the Air Force; and ELAINE C. DUKE, in her official capacity as Acting Secretary of Homeland Security,<br><br>Defendants. | CASE NO. 17-CV-6516<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

# NATURE OF THE ACTION

1. This action, brought on behalf of transgender individuals, seeks to ensure that all qualified Americans have an equal opportunity to serve in the United States military, that transgender individuals are free from arbitrary and invidious discrimination, and that the constitutional rights of transgender individuals to autonomy, privacy, and freedom of expression are respected and protected.

2. In June 2016, following an exhaustive multi-year review supported by reams of data, interviews, and analysis, the Department of Defense ("DOD") announced that it would reverse its prior unconstitutional policy barring openly transgender people from serving in the military, and would implement a policy expressly allowing transgender people to serve openly in the United States armed forces ("June 2016 Policy"). Since that announcement, and in reliance thereon, hundreds of American servicemembers followed protocol and informed their chain of command that they are transgender. These transgender servicemembers have continued to serve without incident. In addition, as a consequence of the DOD's announced policy, after years of unlawful exclusion, openly transgender persons have believed for the first time that it is possible for them to serve their country in the Armed Forces.

3. However, in a burst of Twitter statements on July 26, 2017, Defendant President Donald J. Trump abruptly announced that the United States military would return to discriminating unlawfully against transgender people solely because of their transgender status. By proclaiming that "the United States Government will not accept or allow Transgender individuals to serve in any capacity in the U.S. Military," President Trump signaled that transgender troops would be barred altogether from serving openly in our Armed Forces.

4. On August 25, 2017, Defendant President Trump formalized the government's policy, directing his co-Defendants as leaders of the DOD and

Department of Homeland Security ("DHS," and together with the DOD, the "Departments") to reinstate the ban "on military service by transgender individuals that was in place prior to June 2016" (the "August 25 Directive"). Specifically, President Trump directed the Departments (i) to ban the "accession of transgender individuals into military service," (ii) to "halt all use of DOD or DHS resources to fund sex reassignment surgical procedures for military personnel" except in limited instances, and (iii) to implement a plan to return to the prohibition on military service for transgender people, including those current servicemembers who, in reliance on the June 2016 Policy, came out to their command. *See Memorandum Regarding Military Service by Transgender Individuals,* -- Fed. Reg. -------- (entered Aug. 25, 2017) (publication forthcoming). President Trump's August 25 Directive, which carries the force of law, does not reference any evidence, facts or analysis to support the imposition of this categorical ban.

5. Plaintiffs here are (i) Aiden Stockman, Nicolas Talbott, and Tamasyn Reeves, transgender individuals who have taken steps to enlist in the military, (ii) Jaquice Tate and several other openly transgender active servicemembers, proceeding as anonymous plaintiffs, who will be impacted by President Trump's August 25 Directive, and (iii) Equality California, the nation's largest statewide lesbian, gay, bisexual, transgender, and queer ("LGBTQ") civil rights organization.

6. The August 25 Directive inflicts serious injuries upon Plaintiffs and Plaintiff EQCA's members. First, the August 25 Directive expressly forecloses transgender people from acceding into military service. Second, the August 25 Directive causes immediate and concrete injury to the current servicemember Plaintiffs, each of whom came out as transgender to their chain of command in reliance on the June 2016 Policy lifting the prior ban. Specifically, the current servicemember Plaintiffs will be subject to involuntary separation beginning March 23, 2018, suspending their reasonable expectation of continued service. Third, the August 25 Directive denies the current servicemember Plaintiffs equal

access to full medical care. Fourth, the August 25 Directive chills the speech and expression of each of the Plaintiffs and Plaintiff EQCA's members.

7. Fundamentally, without any rational basis, the August 25 Directive denies Plaintiffs and their members the equal protection of the laws, their right to freedom of expression, and their right to liberty and privacy, in violation of the First and Fifth Amendments to the United States Constitution. Accordingly, Plaintiffs seek a declaration that the August 25 Directive is unconstitutional, and an injunction preventing Defendants from implementing and enforcing it.

## JURISDICTION AND VENUE

8. This court has jurisdiction over the claims pursuant to 28 U.S.C. Sections 1331 and 1343. This Court has further remedial authority under the Declaratory Judgment Act, 28 U.S.C. Sections 2201 and 2202 *et seq*.

9. Venue is proper in the Central District of California under 28 U.S.C. Section 1391(e) because Plaintiffs reside in this judicial district and a substantial part of the events giving rise to this action occurred in this District.

## PARTIES

10. Plaintiff Aiden Stockman is a transgender man who wants to serve his country through military service, and has taken steps to do so. Mr. Stockman, 20, was raised and currently resides in California. Mr. Stockman has long been interested in serving his country and intended to join the Air Force. As a young man, Mr. Stockman spoke with friends and neighbors who were stationed at nearby Twenty-Nine Palms Air Force Base to discuss what it is like to serve in the Air Force. Mr. Stockman came out to his family as transgender in the eighth grade. At or about that time, he began seeking medical advice related to gender transition. In June 2014, when he was in the eleventh grade, Mr. Stockman began hormone replacement therapy ("HRT"). Later that year, Mr. Stockman took the Armed Services Vocational Aptitude Battery ("ASVAB") test consistent with his intention of acceding into the military. He hoped to join the Air Force following

his graduation from high school, but wanted to complete a double-mastectomy (i.e., "top surgery") first. After finding a doctor, Mr. Stockman ultimately made plans to undergo top surgery, planning to enlist thereafter. The June 2016 Policy permitting open service by transgender people gave Mr. Stockman comfort that he would be able to pursue a career of military service. However, upon learning of the August 25 Directive, Mr. Stockman felt crushed, as he will no longer be able to pursue his dream of serving his country in the Air Force.

11. Plaintiff Nicolas Talbott, 23, is a transgender man currently residing in Ohio. After graduating from college with a degree in sociology and criminology, he planned to enlist in the military in pursuit of a career in counter-terrorism. Prior to issuance of the June 2016 Policy, Mr. Talbott contacted military recruiters on several occasions to express his interest in serving his country, but each time he was informed that regulations prohibited his service because he is transgender. After the June 2016 Policy was announced, Mr. Talbott found a recruiter for the Air Force National Guard who advised that he would help him enlist. Mr. Talbott met with the recruiter in December 2016 and filled out paperwork confirming his interest in acceding into the military. The recruiter asked Mr. Talbott to obtain a letter from his doctor confirming that being transgender did not have any adverse effects on his life or his ability to perform military-related duties. The recruiter advised that the next step in the process would be to meet with the regional Military Entrance Processing Station ("MEPS") for a physical exam and to take the ASVAB test, but later advised that MEPS would not begin processing for transgender enlistees until mid-2017. Mr. Talbott scheduled his appointment with his doctor, began studying practice ASVAB exams, and was training regularly for the physical exam, all in anticipation of enlisting in 2017. However, when President Trump tweeted about the re-enactment of the ban on transgender military service and then issued the August 25

///

Directive, Mr. Talbott was devastated and knew that he would no longer be able to pursue a military career.

12. Plaintiff Tamasyn Reeves is a transgender woman currently residing in California. Ms. Reeves, 29, has wanted to join the Navy since she was 17. Her family has a tradition of service in the military: her grandfather served in the Navy during the Korean War, two of her uncles served in the Air Force, and two of her cousins served in the Navy. Ms. Reeves first spoke to a recruiter at age 21. The recruiter told Ms. Reeves that she was not eligible to enlist because of the military's then-policy banning LGBTQ individuals from military service. At age 23, Ms. Reeves began HRT, but continued to be barred from enlistment. Following issuance of the June 2016 Policy, Ms. Reeves decided to enlist as soon as the final procedures for accession of transgender individuals were solidified. The abrupt reversal in the August 25 Directive prevents her accession into the military, despite her longstanding desire to do so.

13. Plaintiff Jaquice Tate is a transgender man currently serving in the Army. He enlisted in 2008 because he wanted a career in which he could take pride. He hopes to serve a twenty year term. Mr. Tate has served domestically and internationally, including a deployment to Iraq. Currently, he is a Military Police Officer and he has served on drug suppression teams. Each of his command leaders awarded him a Colonel Coin of Excellence and he has received numerous Army Achievement Medals. The Army has approved his application to become a Drill Sergeant. In reliance on the June 2016 Policy, Mr. Tate informed his chain of command of his true gender. His chain of command has supported him throughout his process of medical transition. However, since issuance of the August 25 Directive, Mr. Tate fears that he will lose his job and retirement opportunities after his nearly ten years of dedicated service. Mr. Tate and his wife had planned to begin the process of having children next year, but the financial uncertainty caused

///

5
COMPLAINT

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

by the August 25 Directive is forcing them to place their future family on hold indefinitely.

14. Plaintiffs John Doe 1-2 and Jane Doe are active duty servicemembers who serve openly as transgender persons. They proceed under pseudonyms for fear of retribution.

15. Plaintiff John Doe 1 is a transgender man who has served in the United States Air Force since 2012. John Doe 1 comes from a military family; his father served in the military for 30 years. John Doe 1 has plans make a career out of military service as well. John Doe 1 currently is stationed and resides in California. In reliance on the June 2016 Policy permitting open service by transgender servicemembers, John Doe 1 felt that the military had become an "open space" to come out. In April 2017, John Doe 1 came out to his chain of command. John Doe 1 subsequently met with Air Force medical doctors and psychologists to discuss gender transition, and received a diagnosis of gender dysphoria. John Doe 1 is awaiting a meeting with his medical team and commander to discuss his transition plan. John Doe 1 recently was awarded Academic Achievement and Distinguished Graduate distinctions from the Airmen Leadership School, and received a "Must Promote" performance report. Although his colleagues and chain of command have been supportive of John Doe 1 since he came out, John Doe 1 believes that the August 25 Directive will preclude him from obtaining promotions and further advancing his career in the Air Force.

16. Plaintiff John Doe 2 is a transgender man currently serving in the Army. John Doe 2 voluntarily enlisted with the Army to serve his country, to achieve financial security, and to honor his family's tradition of service. His technical expertise pertains to the operations, diagnostics, and maintenance of the multichannel communications systems necessary for the Army to make real-time strategic and tactical decisions. His position requires Secret-level Security Clearance. John Doe 2 earned an early promotion wavier to become an Army

1  Specialist and was awarded two Colonel Coins of Excellence. In reliance on the
2  June 2016 Policy, he came out as transgender to his unit, his chain of command,
3  and his medical providers. John Doe 2 has begun medical transition to his true
4  gender, and has received the support of his chain of command and his unit. John
5  Doe 2's current term of enlistment ends in 2020. He had hoped to become a
6  twenty-year veteran, but under the shadow of the August 25 Directive, John Doe 2
7  fears that his future in the military, and his ability to support his family, is in
8  jeopardy.

9      17. Plaintiff Jane Doe is a transgender woman currently serving in the Air
10 Force. In the seven years since she enlisted, Jane Doe has been deployed twice.
11 She currently is stationed abroad as a Staff Sergeant. Jane Doe joined the military
12 in hopes of serving her country, achieving financial stability and garnering
13 personal skills such as discipline, self-respect and service of others. After the ban
14 on transgender service was lifted by the June 2016 Policy, Jane Doe came out to
15 her chain of command. She found her military colleagues to be supportive. Jane
16 Doe carefully reviewed the guidance and policies issued by the DOD, and after
17 meeting with her doctors, made the decision to pursue transition-related medical
18 care. While she has received early promotions, two achievement medals and one
19 commendation medal, she now fears that the August 25 Directive compromises her
20 ability to achieve promotion, jeopardizes her medical benefits and ultimately
21 forecloses her ability to continue her career in the military.

22     18. Plaintiff Equality California ("EQCA") is an I.R.S. 501(c)(4)
23 organization dedicated to LGBTQ civil rights. Specifically, EQCA is dedicated to
24 combatting discrimination and injustice on the basis of sexual orientation and
25 gender identity, and to protecting the fundamental rights of those within the
26 LGBTQ community and the vulnerable communities of which they are a part. Its
27 more than 500,000 members include transgender individuals in active military
28 service, transgender military veterans, and transgender individuals who have taken

steps to serve and ultimately intend to pursue long-term careers in the United States Armed Forces. EQCA's membership also includes family members and dependents of openly transgender individuals, each of whom share an interest in ensuring that all qualified individuals wishing to serve their country through military service are permitted to do so regardless of their gender identity.

19. Defendant Donald J. Trump is President of the United States and Commander in Chief of the Armed Forces of the United States. On July 26, 2017, President Trump announced via Twitter that transgender people would not be permitted to serve "in any capacity in the U.S. military." On August 25, 2017, he delivered an official executive directive to the Departments concerning "Military Service by Transgender Individuals." The August 25 Directive, which is to be formally published in the Federal Register, unlawfully bans transgender persons from enlisting or serving openly in the military and prohibits the military from paying for certain forms of healthcare related to gender transition.

20. Defendant James N. Mattis is the United States Secretary Defense. Secretary Mattis directs the Department of Defense, which has been charged with execution and implementation of the President's unlawful August 25 Directive.

21. Defendant Joseph F. Dunford, Jr. is a United States Marine Corps General and serves as the current Chairman of the Joint Chiefs of Staff. In conjunction with co-defendants, General Dunford, Jr. has been charged with execution and implementation of the President's unlawful August 25 Directive.

22. Defendant Richard V. Spencer is the United States Secretary of the Navy. Secretary Spencer directs the Department of the Navy and the United States Marine Corps, which have been charged with execution and implementation of the President's unlawful August 25 Directive.

23. Defendant Ryan D. McCarthy is the Acting United States Secretary of the Army. Secretary McCarthy directs the Department of the Army, which has

///

been charged with execution and implementation of the President's unlawful August 25 Directive.

24. Defendant Heather A. Wilson is the United States Secretary of the Air Force. She directs the Department of the Air Force, which has been charged with execution and implementation of the President's unlawful August 25 Directive.

25. Defendant Elaine C. Duke is the Acting United States Secretary of Homeland Security. She directs the DHS, which is responsible for the administration and operation of the United States Coast Guard, and which has been charged with execution and implementation of the President's unlawful August 25 Directive.

# FACTUAL BACKGROUND

**A. Following an Exhaustive Review in 2015-2016, the DOD Concluded that Open Service by Transgender People Best Served the Interests of U.S. Armed Forces**

26. In May 2014, then-Secretary of Defense Chuck Hagel directed the DOD to review whether transgender people should be permitted to serve openly in the U.S. armed forces.

27. In August 2014, the DOD amended its physical disability policy to remove references to mandatory exclusion based on "sexual gender and identity disorders," and issued a new regulation instructing each branch of the armed forces to assess whether there was any justification to maintain a ban on service by openly transgender persons.

28. In issuing this regulation, Secretary Hagel stated that "every qualified American who wants to serve our country should have an opportunity to do so if they fit the qualifications and can do it."

29. Secretary Hagel was succeeded as Secretary of Defense by Secretary Ashton B. Carter. In July 2015, Secretary Carter announced that the military would comprehensively analyze whether there was any justification to maintain the ban on service by openly transgender persons. Accordingly, Secretary Carter

created a working group to address this issue including the Armed Services, the Joint Chiefs of Staff, the service secretaries, and personnel, training, readiness, and medical specialists from across the DOD. The lengthy and comprehensive review process that followed included an examination of all available data, including but not limited to existing studies and research and input from transgender service members, commanding officers who supervised transgender service members, military readiness and personnel experts, outside expert groups, and medical professionals. The review process also included a careful analysis of the eighteen other countries that permit military service by openly transgender people. Doctors, employers, and insurance companies were consulted regarding the provision of medical care to transgender people.

30. The DOD also commissioned the RAND Corporation—a defense consultancy formed after World War II to connect military planning with research and development decisions, and which now operates as an independent think tank financed by the U.S. government—to determine the impact of permitting transgender servicemembers to serve openly. The study titled *Assessing the Implications of Allowing Transgender Personnel to Serve Openly* (the "RAND Study") ultimately concluded that allowing transgender people to serve openly would cost little and have no significant impact on unit readiness. As for the potential impact on healthcare costs, the RAND Study concluded that health care costs for transgender servicemembers, including costs related to gender transition-related treatment, would "have little impact on and represents an exceedingly small proportion of [DOD's] overall health care expenditures."

31. Based on the results of this comprehensive review process, on June 30, 2016, the DOD announced its conclusion that open transgender service would best serve the military's interests in recruiting and retaining the most highly qualified personnel. In issuing the June 2016 Policy, Secretary Carter explained that this conclusion was based on a number of considerations, including *inter alia*:

(a) the fact that thousands of transgender people already serve, and that the military has already invested hundreds of millions of dollars to train them collectively; (b) that the military benefits by retaining individuals who are already trained and who have already proven themselves; (c) the need to provide both transgender servicemembers and their commanders with clear guidance on questions such as deployment and medical treatment; and (d) the principle that "*Americans who want to serve and can meet our standards should be afforded the opportunity to compete to do so*."

32. Secretary Carter announced that "[e]ffective immediately, transgender Americans may serve openly. They can no longer be discharged or otherwise separated from the military just for being transgender." This unequivocal statement was accompanied by the formal issuance of Directive-Type Memorandum 16-005, *Military Service of Transgender Service Members*, which lifted the ban on military service and accession by openly transgender people. Directive-Type Memorandum 16-005 sets forth the DOD's conclusion, based on thorough review and analysis, that:

> The defense of the Nation requires a well-trained, all-volunteer force comprised of Active and Reserve Component Service members ready to deploy worldwide on combat and operational missions. The policy of the Department of Defense is that service in the United States military should be open to all who can meet the rigorous standards for military service and readiness. Consistent with the policies and procedures set forth in this memorandum, transgender individuals shall be allowed to serve in the military. These policies and procedures are premised on my conclusion that open service by transgender Service members while being subject to the same standards and procedures as other members with regard to their medical fitness for duty, physical fitness, uniform and grooming, deployability, and retention, is consistent with military readiness and with strength through diversity.

In accordance with Directive-Type Memorandum 16-005, transgender people were to be permitted to enlist in the U.S. military and openly serve beginning on July 1, 2017.

33. In furtherance of its conclusions and in an effort to consistently and effectively implement this change in policy, the DOD took the following actions:

- In September 2016, the DOD issued an implementation handbook entitled *Transgender Service in the United States Military* setting forth guidance and instructions to both military servicemembers and commanders regarding how to understand and implement the new policies enabling open service of transgender servicemembers.
- On October 1, 2016, the Office of the Undersecretary of Defense for Personnel and Readiness issued DOD Instruction 1300.28 entitled *In-Service Transition for Transgender Service Members*. The instruction set forth further guidance to ensure open service by transgender servicemembers, including details regarding revisions to medical treatment provisions.
- The Acting Assistant Secretary of Defense for Health Affairs issued a memorandum entitled *Guidance for Treatment of Gender Dysphoria for Active and Reserve Component Service Members*.
- On November 29, 2016, the DOD revised Directive 1020.02E, *Diversity Management and Equal Opportunity in the DOD*, expressly to prohibit discrimination and harassment on the basis of gender identity.

34. In line with the guidance issued by the DOD, the United States Coast Guard adopted similar policies and procedures for service by transgender servicemembers.

**B.     Defendants Institute an Arbitrary Ban on Transgender Servicemembers**

35. In a series of statements released via Twitter on July 26, 2017, Defendant President Donald J. Trump abruptly announced that the United States military would return to banning military service by transgender people.

36. He tweeted: "After consultation with my Generals and military experts, please be advised that the United States Government will not accept or

allow Transgender individuals to serve in any capacity in the U.S. Military. Our military must be focused on decisive and overwhelming victory and cannot be burdened with the tremendous medical costs and disruption that transgender in the military would entail. Thank you."

37. This July 26, 2017 announcement was rendered without any significant study or analysis and lacks a rational basis.

38. Shortly after the Twitter announcement, members of both major political parties criticized this abrupt change in policy, and fifty six former generals and admirals issued a public statement denouncing the new policy.

39. Less than one month following his initial Twitter statement, Defendant President Trump issued the August 25 Directive formalizing the administration's policy. The August 25 Directive orders co-Defendants (i) to ban the "accession of transgender individuals into military service," (ii) to "halt all use of DOD or DHS resources to fund sex reassignment surgical procedures for military personnel" except in limited instances, and (iii) to implement a plan to return to the prohibition on military service for transgender people, including those current servicemembers who, in reliance on the June 2016 Policy, came out to their command.

40. Similar to the July 26, 2017 Twitter announcement, the August 25 Directive was rendered without any significant study or analysis and lacks a rational basis.

41. The stated bases offered in support of Defendants' August 25 Directive are pretextual, arbitrary, capricious, and unsupported by facts, evidence, or analysis. Indeed, the DOD previously concluded in Directive Type Memorandum 16-005, after more than a year of exhaustive analysis, that "open service by transgender Service members . . . is consistent with military readiness," as well as the "defense of the Nation" generally. Since issuance of Directive Type Memorandum 16-005, transgender people have been serving openly without

incident or any negative impact upon military readiness, lethality, unit cohesion, or the national defense generally.

42. The government-commissioned RAND Report concluded that the "costs of gender transition related healthcare treatment are relatively low," and amount to possible increases of only between "$2.4 million and $8.4 million annually, representing a 0.04% to 0.13% increase in active-component healthcare expenditures."

43. In contrast, separating and replacing currently serving transgender service members would be costly and cause disruption, and also would undermine unit cohesion, respect for military authority, and morale. Research from the Naval Postgraduate School published by the Palm Center in August 2017 (the "Palm Center Report") concludes that the "financial cost of fully implementing President Trump's ban on transgender servicemembers would be $960 million," assuming the military acted to expel the estimated 12,800 transgender servicemembers and needed to replace them. Even assuming the military acted to expel and replace only 1,320 transgender servicemembers, which was the RAND Report's lowest estimate of the total number of active transgender servicemembers, the Palm Center Report indicates the financial cost of fully implementing President Trump's ban would still be at least $99 million.

44. The August 25 Directive applies to currently serving open transgender servicemembers, including Plaintiffs, who have not yet undergone gender reassignment surgery, but have openly expressed their gender identity, as well as to currently serving transgender servicemembers who have not yet come out to their chain of command, but wish to do so.

45. The August 25 Directive bars currently serving transgender servicemembers, including Plaintiffs, from re-enlisting.

46. The August 25 Directive bars currently serving transgender servicemembers, including Plaintiffs, from earning and obtaining promotions in

rank, or from attaining the service record required to qualify for military retirement benefits.

47. The August 25 Directive bars currently serving transgender servicemembers, including Plaintiffs, from receiving equal access to full medical care.

48. The August 25 Directive bars transgender people who wish to pursue careers in the Armed Forces and are able to meet the standards for military service, including Plaintiffs, from acceding into the military.

# FIRST CLAIM FOR RELIEF

## Fifth Amendment – Equal Protection

### (against all Defendants)

49. Plaintiffs re-allege and incorporate by reference the preceding allegations in this Complaint as if fully set forth herein.

50. The Due Process Clause of the Fifth Amendment prohibits the federal government from denying persons the equal protection of the laws.

51. Defendants' August 25 Directive excluding transgender persons from eligible military service discriminates against Plaintiffs and Plaintiff's members based on their sex and transgender status, without lawful justification, in violation of the Equal Protection component of the Due Process Clause of the Fifth Amendment.

52. Defendants' exclusion of transgender persons from military service lacks a rational basis, is arbitrary, and cannot be justified by any government interest.

53. Defendants' August 25 Directive denying equal health benefits to transgender persons also discriminates against Plaintiffs and Plaintiff's members based on their sex and transgender status, without lawful justification, in violation of the Equal Protection component of the Due Process Clause of the Fifth Amendment.

54. Defendants' action to deny transgender persons equal health benefits lacks a rational basis, is arbitrary, and cannot be justified by any government interest.

55. Defendants' above-described discrimination against transgender persons—a discrete and insular group that lacks the power to protect its rights through the legislative process, and one that has suffered a history of targeted discrimination and exclusion—is not narrowly tailored to advance any important or compelling government interest.

56. As a result of Defendants' implementation and enforcement of the August 25 Directive, Plaintiffs and Plaintiff's members have suffered injuries and will suffer further irreparable harm to their constitutional rights under the Fifth Amendment if the directive is not declared unconstitutional and enjoined.

57. Plaintiffs have no adequate remedy at law.

## SECOND CLAIM FOR RELIEF

### Fifth Amendment – Due Process

### (against all Defendants)

58. Plaintiffs re-allege and incorporate by reference the preceding allegations in this Complaint as if fully set forth herein.

59. The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving individuals of their property or other interests without due process of law.

60. The Due Process Clause of the Fifth Amendment requires, at a minimum, that government action have some rational basis before depriving any person of his or her property or liberty interests.

61. Defendants' June 2016 Policy permitting transgender persons to serve openly in the military, together with reliance by Plaintiffs and Plaintiff's members on that policy, created a protected interest in their ability to continue serving in the military as openly transgender persons.

62. Defendants' August 25 Directive will deprive Plaintiffs and Plaintiff's members of their protected interests in continued military service as openly transgender persons.

63. Defendants' deprivation of Plaintiffs' and Plaintiff's members' protected interests in continued military service as openly transgender persons is arbitrary and without any rational basis.

64. As a result of Defendants' implementation and enforcement of the August 25 Directive, Plaintiffs and Plaintiff's members have suffered injuries and will suffer further irreparable harm to their constitutional rights under the Fifth Amendment if the directive is not declared unconstitutional and enjoined.

65. Plaintiffs have no adequate remedy at law.

## THIRD CLAIM FOR RELIEF

### Fifth Amendment – Right to Privacy

### (against all Defendants)

66. Plaintiffs re-allege and incorporate by reference the preceding allegations in this Complaint as if fully set forth herein.

67. The Due Process Clause of the Fifth Amendment grants Plaintiffs and Plaintiff's members constitutional liberties and a fundamental right to privacy that encompasses and protects Plaintiffs' and Plaintiff's members' right to self-identification and self-determination as transgender individuals who live, form intimate relationships, work, and pursue happiness and meaning as the gender, or non-gender, with which they identify.

68. The Due Process Clause of the Fifth Amendment requires, at a minimum, that government action have some rational basis before depriving any person of their liberty interests.

69. Defendants' August 25 Directive impermissibly burdens Plaintiffs' and Plaintiff's members' fundamental liberty to live consistently with their gender

///

identity, and unlawfully impinges upon Plaintiffs' privacy by penalizing and stigmatizing them for expressing a fundamental aspect of their personal identity.

70. Defendants' August 25 Directive to exclude transgender persons from service in and accession into the military is arbitrary and lacks any rational basis.

71. As a result of Defendants' implementation and enforcement of the August 25 Directive, Plaintiffs and Plaintiff EQCA's members have suffered injuries and will suffer further irreparable harm to their constitutional rights under the Fifth Amendment if the directive is not declared unconstitutional and enjoined.

72. Plaintiffs have no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF

### First Amendment – Retaliation for Free Speech & Expression

### (against all Defendants)

73. Plaintiffs re-allege and incorporate by reference the preceding allegations in this Complaint as if fully set forth herein.

74. The First Amendment grants Plaintiffs the constitutional right to freedom of speech and expression.

75. By banning military service by transgender people, Defendants' August 25 Directive violates Plaintiffs' and Plaintiff's members' rights of free speech and expression under the First Amendment by impermissibly restricting, punishing, and chilling all public and private speech that would tend to identify Plaintiffs and Plaintiff's members as transgender people. The August 25 Directive impermissibly burdens such speech on the basis of the content and viewpoint of such speech.

76. As a result of Defendants' implementation and enforcement of the August 25 Directive, Plaintiffs and Plaintiff's members have suffered injuries and will suffer further irreparable harm to their constitutional rights under the First Amendment if the directive is not declared unconstitutional and enjoined.

77. Plaintiffs have no adequate remedy at law.

# PRAYER FOR RELIEF

WHEREFORE Plaintiffs pray for judgment on their Complaint as follows:

1. That this Court find and declare that Defendants' August 25 Directive to exclude transgender people from federal military service, ban the accession of transgender people into the U.S. military, and prohibit the funding of sex reassignment surgical procedures as part of health care for transgender servicemembers is unconstitutional;

2. That Defendants, and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them, preliminarily and permanently be enjoined from enforcing the August 25 Directive to exclude transgender people from serving or enlisting in the military or to preclude transgender servicemembers from access to full medical care, including gender reassignment treatment;

3. That Plaintiffs be awarded their costs and reasonable attorneys' fees; and

4. For such other relief as the Court may deem just and proper.

Dated: September 5, 2017

Respectfully submitted,

LATHAM & WATKINS LLP
  Amy C. Quartarolo
  Adam S. Sieff
  Harrison J. White

By    /s/ Amy C. Quartarolo
     Amy C. Quartarolo

*Attorneys for Plaintiffs Aiden Stockman, Nicolas Talbott, Tamasyn Reeves, Jaquice Tate, John Does 1-2, Jane Doe, and Equality California*