LATHAM & WATKINS LLP
  Marvin S. Putnam (SBN 212839)
    marvin.putnam@lw.com
  Amy C. Quartarolo (SBN 222144)
    amy.quartarolo@lw.com
  Adam S. Sieff (SBN 302030)
    adam.sieff@lw.com
  Harrison J. White (SBN 307790)
    harrison.white@lw.com
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Telephone: +1.213.485.1234
Facsimile: +1.213.891.8763

National Center for Lesbian Rights
  Shannon P. Minter (SBN 168907)
    sminter@nclrights.org
  Amy Whelan (SBN 2155675)
    awhelan@nclrights.org
870 Market Street, Suite 360
San Francisco, CA 94102
Telephone: +1.415.392.6257
Facsimile: +1.415.392.8442

GLBTQ Legal Advocates & Defenders
  Jennifer Levi (*pro hac vice granted*)
    jlevi@glad.org
  Mary L. Bonauto (*pro hac vice forthcoming*)
    mbonauto@glad.org
30 Winter Street, Suite 800
Boston, MA 02108
Telephone: +1.617.426.1350
Facsimile: +1.617.426.3594

*Attorneys for Plaintiffs Aiden Stockman, Nicolas Talbott, Tamasyn Reeves, Jaquice Tate, John Does 1-2, Jane Doe, and Equality California*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIDEN STOCKMAN; NICOLAS TALBOTT; TAMASYN REEVES; JAQUICE TATE; JOHN DOES 1-2; JANE DOE; and EQUALITY CALIFORNIA,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, et al.<br><br>Defendants. | CASE NO. 5:17-CV-01799-JGB-KK<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEFING REGARDING *DOE V. TRUMP*, NO. 17-CV-01597-CKK (D.D.C. OCT. 30, 2017)** |

Plaintiffs submit this supplemental briefing in response to the Court's Minute Order issued on November 2, 2017 [ECF No. 42] (the "Minute Order").

The Minute Order asks the parties to address two questions:

1. Whether the *Doe* decision affects this case and, if so, how; and
2. Whether this Court should stay this matter pending further proceedings in *Doe*.

The short answers to these questions are: (1) The *Doe* decision preliminarily enjoins Defendants from enforcing portions of President's Trump's ban—specifically as related to accession and military service by transgender people—including against the Plaintiffs in this case; and (2) A stay is not warranted because it would subject Plaintiffs to serious harms, because Defendants would suffer no hardship from denial of a stay, and because a stay would not meaningfully simplify or expedite the Court's consideration of the issues in this case. The *Doe* injunction does not address the full range of irreparable injuries Plaintiffs seek to enjoin—injuries that they will continue to suffer if the Court stays the proceedings. Moreover, the *Doe* injunction is preliminary in nature and may be stayed, reversed or limited on appeal—an option Defendants concede they are considering—and in any event, a decision on the merits by the D.C. Circuit will not be binding on this Court or the Ninth Circuit, nor will it address all of Plaintiffs' claims for relief in this action. In these circumstances, a discretionary stay is unwarranted.

## I. THE *DOE* INJUNCTION AFFORDS PLAINTIFFS PARTIAL AND PRELIMINARY RELIEF

Plaintiffs brought this lawsuit seeking both a preliminary and permanent injunction related to President Trump's order banning military service by transgender people, and denying them essential medical care. *See Military Service by Transgender Individuals*, 82 Fed. Reg. 41319 (Aug. 30, 2017) ("the ban"). As Plaintiffs explain in their Motion for Preliminary Injunction [ECF No. 15], the ban has three components. *First*, it imposes a blanket and indefinite extension of the

ban on enlistment by openly transgender persons. (*Id.* at § 2(a) ("<u>Accession Ban</u>").) *Second*, it "halt[s] all use of DOD or DHS resources to fund sex reassignment surgical procedures for military personnel," except in limited circumstances. (*Id.* at § 2(b) ("<u>Sex Reassignment Surgery Directive</u>").) *Third*, it bans the retention of transgender service members and requires their separation from the military by directing, no later than March 23, 2018, a "return" to the pre-June 2016 rules that excluded transgender people from serving openly. (*Id.* at §§ 1(b), 3 ("<u>Retention Ban</u>").)

There are four parallel actions each challenging the ban: (i) this action; (ii) an action pending in the U.S. District Court for the District of Columbia ("*Doe v. Trump*"); (iii) an action pending in the U.S. District Court for the District of Maryland ("*Stone v. Trump*"); and (iv) an action pending in the U.S. District Court for the Western District of Washington ("*Karnoski v. Trump*").

On October 30, 2017, the court in *Doe v. Trump* granted partial preliminary relief by enjoining Defendants "from enforcing the Accession and Retention Directives, corresponding with sections 1(b) and 2(a) of the Presidential Memorandum, until further order of the Court or until this case is resolved." *Doe v. Trump*, No. CV 17-1597 (CKK), 2017 WL 4873042, at *2 (D.D.C. Oct. 30, 2017). The court, however, granted Defendants' motion to dismiss Plaintiffs' claims with regard to the Sex Reassignment Surgery Directive, on grounds that the plaintiffs in that case lacked standing to challenge it because the court concluded that no plaintiff had relevant medical care planned after the effective date of the Sex Reassignment Surgery Directive. *See id.* at *33.

The *Doe* injunction, which rests entirely upon its conclusion that plaintiffs are likely to succeed on the merits of its Fifth Amendment equal protection claim, preliminarily enjoins Defendants from enforcing the Accession Ban and Retention Ban against the Plaintiffs in this case pending the final judgment of the D.C.

District Court, unless otherwise stayed, modified, or reversed. It does *not* address Plaintiffs' challenge to the Sex Reassignment Surgery Directive.

## II. THE COURT SHOULD NOT STAY PROCEEDINGS IN THIS CASE

In deciding whether to stay proceedings in light of other pending litigation, courts consider (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp*., 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

Because the preliminary relief granted in *Doe* is subject to stay or reversal and does not reach every aspect of the ban, Plaintiffs will continue to face the irreparable harms if this action is stayed. By contrast, continuing to adjudicate Plaintiffs' purely legal claims imposes no conceivable hardship upon Defendants. Nor will a stay simplify resolution of this case, as this Court (and likely the Ninth Circuit) will be required to exercise its independent judgment concerning the merits of Plaintiffs' claims notwithstanding the persuasive value of any decision by the D.C. District or Circuit courts.

### A. Plaintiffs Will Be Harmed If A Stay Is Granted.

Although the *Doe* injunction prevents Defendants from enforcing the Accession and Retention Bans on an interim basis, it does not provide the full scope of relief Plaintiffs seek in this case. Granting a stay would therefore allow many of the harms at issue in this case to continue unabated.

First, the *Doe* injunction does not insulate Plaintiffs from the loss of essential medical services, because the injunction in that case did not reach the Sex Reassignment Surgery Directive. *See Fishman v. Paolucci*, 628 F. App'x 797, 801 (2d Cir. 2015) (holding "a lack of medical services" constitutes "irreparable harm"). Staying this case pending proceedings in *Doe* would thus withhold relief

necessary to remedy the full extent of the violation Plaintiffs suffer under the Fifth and First Amendments, including the stigma and deprivation of constitutional rights entailed by Defendants' disparate treatment of Plaintiffs with respect to needed medical care. *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury") (internal citation and quotation marks omitted); *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997) (holding that an equal protection violation constitutes irreparable harm). The plaintiffs in *Doe* were found to lack standing to challenge the prohibition on payment for sex-reassignment surgery because none had transition-related surgeries planned after March 22, 2018, and thus had not shown that they are "substantially likely to be impacted by the Sex Reassignment Surgery Directive." *Doe*, 2017 WL 4873042, at *24. But unlike the *Doe* plaintiffs, several Plaintiffs here have gender transition plans, developed in accordance with the pre-ban open service policy, that call for them to undergo gender transition-related surgery *after* March 2018. (*See* John Doe 1 Supp. Decl., ¶ 4; John Doe 2 Decl., ¶ 22; John Doe 2 Supp. Decl., ¶ 4.) For example, Plaintiff John Doe 2's transition plan currently includes a projected surgery date of April 2018, with the specific date to be selected based on surgeon availability. Under the ban's prohibition on the DOD or DHS resources to fund sex-reassignment surgical procedures, he will no longer be eligible for that surgery after March 22, 2018.

Second, a stay would harm Plaintiffs because the *Doe* injunction is subject to stay, reversal, or modification by the District Court or the D.C. Circuit. Serving under such conditions subjects Plaintiffs to unnecessary and destabilizing uncertainty, where their continued eligibility to serve is subject to revision at any time depending on what happens in another case. Any delay in the resolution of this case would exacerbate those harms, forcing Plaintiffs to make critical decisions about their future plans for military service without knowing whether

1 those plans may be overturned, and their military careers abruptly terminated, by a
2 decision upholding the ban or staying the injunction in *Doe*.

3      In similar circumstances, courts have issued their own injunctions rather
4 than requiring plaintiffs to rely on the uncertain protection of injunctions issued in
5 other circuits. *See Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080,
6 2084 (2017) (discussing injunctions issued both in the District of Hawaii and the
7 District of Maryland); *Int'l Refugee Assistance Project v. Trump*, 241 F. Supp. 3d
8 539, 565-66 (D. Md. 2017) (issuing nationwide preliminary injunction against
9 enforcement of President Trump's second travel ban even though *Hawai'i v.*
10 *Trump*, 241 F. Supp. 3d 1119 (D. Haw. 2017) entered a nationwide temporary
11 restraining order enjoining enforcement of the travel ban one day prior); *Aziz v.*
12 *Trump*, 234 F. Supp. 3d 724, 738-39 (E.D. Va. 2017) (enjoining enforcement of
13 President Trump's first travel ban against U.S. permanent residents even though
14 *Washington v. Trump*, 2017 WL 462040 (W.D. Wash. Feb. 3, 2017) entered an
15 even broader worldwide temporary restraining order enjoining enforcement of the
16 travel ban ten days prior); *cf. Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)
17 ("Only in rare circumstances will a litigant in one cause be compelled to stand
18 aside while a litigant in another settles the rule of law that will define the rights of
19 both.").

20      Indeed, the Department of Justice recently has praised the ordinary and
21 typical federal practice of "multiple lower courts considering similar legal
22 questions," which is "a process of value to the appellate courts and the
23 development of the law more generally." Defendants' Brief [ECF No. 36] in *City*
24 *and Cty. of San Francisco v. Sessions*, No. 3:17-cv-04642-WHO (N.D. Cal. filed
25 Aug. 28, 2017).

### B. Defendants Will Suffer No Hardship Or Inequity From Being Required To Go Forward With This Case.

"[A party seeking] a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis*, 299 U.S. at 255. And "[b]eing required to defend a suit, without more, does not constitute a "clear case of hardship or inequity" within the meaning of *Landis*. *Lockyer*, 398 F.3d at 1112. Defendants cannot plausibly identify any hardship they would suffer if this case proceeds. In particular, this Court's review would in no way impede their ability to further study the issue of military service by transgender people. (*See* Defs.' Mot. to Dismiss and Opp. to Pls.' Mot. for Prelim. Inj. [ECF No. 36], at 36.) In the absence of any hardship denial of a stay would impose upon Defendants, and compared with the manifold irreparable injuries a stay would certainly inflict upon Plaintiffs, a discretionary stay is not warranted here.

### C. A Stay Will Not Aid The "Orderly Course Of Justice" Or Simplify Resolution Of The Issues Before The Court.

Nor is this a case where considerations of judicial economy or efficiency weigh in favor of a stay. Regardless of the outcome in *Doe* at either the District Court or Circuit Court level, this Court will be required to consider the pending motions on their merits and reach its own decision concerning Plaintiff's likelihood of success. While the District Court's analysis in *Doe* may and should be persuasive authority for this Court on many of the claims at issue here, and any decision by the D.C. Circuit may be persuasive as well, neither of those courts' decisions can render this Court's consideration of the pending motions unnecessary or provide binding authority that might narrow or resolve the issues before the Court.

That fact distinguishes this case from cases such as *Ali v. Trump*, 241 F. Supp. 3d 1147 (W.D. Wash. 2017), where a similar case arising in the same Circuit

resulted in preliminary injunctive relief.  The *Ali* Court granted a stay because an appeal in the other case meant that "guidance from the Ninth Circuit will be available shortly."  *Id.* at 1153.  Regardless of the final outcome before the D.C. Circuit, *Doe* will not narrow or resolve any issue before the Court or meaningfully simplify the Court's resolution of the pending motions.

To the extent Defendants seek a stay based on an assumption that the Supreme Court will grant certiorari in *Doe* and issue a decision resolving the issues in this case, that possibility is entirely speculative at this stage.  There presently are four challenges to the ban pending in three different circuits.  There simply is no way of knowing at this time which of the pending cases, if any, may be subject to Supreme Court review.  Indeed, even a Supreme Court decision on the merits in *Doe* would not fully resolve the issues before this Court, because Plaintiffs raise a First Amendment claim that is not raised by the Plaintiffs in *Doe*.

In sum, there is no "clear case of hardship or inequity" that should persuade this Court to refrain from proceeding with an already-scheduled hearing and issuing decisions on the two fully-briefed motions now before it, and there is substantially more than "a fair possibility [] that the stay . . . will work damage" on Plaintiffs.  *Landis*, 299 U.S. at 256.  In these circumstances, no stay is warranted.

## III. CONCLUSION

For the foregoing reasons, the Court should not stay this action and should proceed to consider and decide the pending motions.

Dated:  November 8, 2017                    Respectfully submitted,

LATHAM & WATKINS LLP


By /s/ *Adam S. Sieff*

*Attorneys for Plaintiffs Aiden Stockman, Nicolas Talbott, Tamasyn Reeves, Jaquice Tate, John Does 1-2, Jane Doe, and Equality California*